```
                                                              FILED

 1  DREIER STEIN KAHAN BROWNE WOODS
    GEORGE LLP
 2  Allan Browne (State Bar No. 34923)              2008 JAN 18 PM 1:37
    Sonia Y. Lee (State Bar No. 191837)
 3  450 N. Roxbury Drive, 7th Floor                 CLERK U.S. DISTRICT COURT
    Beverly Hills, California 90210                 CENTRAL DIST. O CALIF.
 4  Telephone: 310.274.7100                              LOS ANGELES
    Facsimile: 310.275.5697
 5  Email:  abrowne@dskbwg.com                      BY_____
            slee@dskbwg.com
 6
    Attorneys for Plaintiffs
 7  Denice Shakarian Halicki, The Original Gone in
    60 Seconds, LLC, Halicki Films, LLC and
 8  Eleanor Licensing, LLC
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENICE SHAKARIAN HALICKI, AN INDIVIDUAL; THE ORIGINAL GONE IN 60 SECONDS, LLC, a Delaware limited liability company; HALICKI FILMS, LLC, a California limited liability company; and ELEANOR LICENSING, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD MONFORT, an individual; RONAELE MUSTANG, INC., a Florida corporation; RONAELE, LLC, a Georgia limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br>**CV08-00351** PSG JTLx<br><br>**COMPLAINT FOR:**<br><br>1. Trademark Infringement<br>2. Federal Unfair Competition<br>3. Copyright Infringement<br>4. State Unfair Competition<br>5. Constructive Trust<br>6. Declaratory Relief |

DREIER STEIN
KAHAN
BROWNE          202304_1.DOC
WOODS

Plaintiffs Denice Shakarian Halicki, The Original Gone in 60 Seconds LLC, Halicki Films LLC, and Eleanor Licensing LLC (collectively, "Plaintiffs") complain and allege as follows:

## THE PARTIES

1. Plaintiff Denice Shakarian Halicki ("Denice") is, and at all relevant times herein was, a natural citizen of the State of California with her principal place of residence in the County of Los Angeles, State of California.

2. Plaintiff The Original Gone in 60 Seconds LLC is a Delaware limited liability corporation, with its principal place of business in the County of Los Angeles, State of California.

3. Plaintiff Halicki Films LLC is a California limited liability corporation, with its principal place of business in the County of Los Angeles, State of California.

4. Plaintiff Eleanor Licensing LLC is a Delaware limited liability corporation, with its principal place of business in the County of Los Angeles, State of California.

5. Plaintiffs are informed and believe, and based thereon allege, that Defendant Edward R. Monfort is a natural citizen of the State of Florida.

6. Plaintiffs are informed and believe, and based thereon allege, that Defendant Ronaele Mustang, Inc. is a corporation or other type of business entity organized under the laws of the State of Florida, doing business in the State of California.

7. Plaintiffs are informed and believe, and based thereon allege, that Defendant Ronaele, LLC is a limited liability company organized under the laws of the State of Georgia, doing business in the State of California.

8. Plaintiffs are unaware of the true names and capacities of defendants DOES 1 through 10, inclusive, and therefore sue these defendants by

such fictitious names. When the true names and capacities of defendants DOES 1 through 10, inclusive, have been ascertained, Plaintiffs will amend the complaint to set forth such facts. Defendants Edward R. Monfort, Ronaele Mustang, Inc., Ronaele, LLC and Does 1 through 10 are referred to herein collectively as "Defendants."

9. Plaintiffs are informed and believe, and based thereon allege, that sometime prior hereto, Defendants and each of them conspired together and maliciously and willfully entered into a scheme to engage in the course of conduct described herein. Plaintiffs are further informed and believe, and based thereon allege, that in pursuance of said conspiracy and scheme, Defendants and each of them did the acts and things herein alleged, and all of such acts and things were participated in and done by all of said Defendants or by one or more of them as steps in said conspiracy.

## JURISDICTION AND VENUE

10. Jurisdiction in this Court is proper as this complaint poses federal questions arising under particular federal statutes, including the United States Copyright Act (17 U.S.C. 101 et seq.) and the Lanham Act (15 U.S.C. 1125 et seq.). To the extent this complaint contains claims for relief under California law, those claims are specifically authorized to be brought in this Court under the supplemental jurisdiction provision of 8 U.S.C. § 1367.

11. This court has personal jurisdiction over Defendants as they are conducting business in the State of California by, among other things, offering the offending motor vehicles and related products for sale in the State of California, as well as launching other business ventures here.

12. Venue is proper in the state of California as the wrongful actions complained of herein were and are being committed in this judicial district, and Plaintiffs reside in this judicial district.

## GENERAL ALLEGATIONS

**The "Original Movie" Starring Eleanor**

13. Denice is the widow of deceased movie and performance car personality H.B. "Toby" Halicki ("Toby"), affectionately known in automobile and movie circles as "The Car Crash King." As a director, producer, financier and actor, Toby made action films that were noted for their intricate stunts and intense car crashes.

14. In 1974, Toby wrote, produced, acted in, financed, directed and marketed the original film "Gone in 60 Seconds" (the "Original Movie"). The undisputed star of the Original Movie was a car by the name of "Eleanor," a 1971 Fastback Mustang custom built by Toby to resemble a Mach 1 Fastback Mustang. Eleanor was the only star to receive a billing credit at the beginning of the film. No other actor was named specifically in the opening credits. Indeed, so special was Eleanor that she was the only star featured on the cover of the original videotape and the subsequently-released DVDs of the Original Movie, and was featured prominently in the advertising, public relations, and marketing of the film when the film was originally released and at all times thereafter.

15. The storyline of "Gone in 60 Seconds" was simple, yet genius. It appealed to both car enthusiasts and the general public alike. At first blush, "Gone in 60 Seconds" is the story of Toby's character (Maindrian Pace) and his cohorts' attempts to steal 48 specific cars in one week to fulfill a contract. At its heart, however, "Gone in 60 Seconds" is the story of one car and Maindrian's checkered and tortured relationship with that car. It is the story of Eleanor – the one "woman" that had eluded and bedeviled Maindrian through time. It is the story of Maindrian's attempts to finally get his "girl." Indeed, the movie culminates with a fantastical 40-minute long chase scene in which Maindrian and Eleanor lead scores of police cars through seven counties and dozens of car crashes before, at last, they "ride off into the sunset."

16. This chase scene, noted in the annals of film making as one of the greatest and most ambitious car stunts ever, along with the allure and magic of Eleanor, which Toby actively and continuously cultivated and commercialized at trade shows, car shows, through merchandising and promotions, helped Toby and "Gone in 60 Seconds" – essentially an "independent" movie without studio backing – gross an impressive $40 million in 1974. The movie and Toby's efforts also catapulted Eleanor into a full-fledged movie star. She went on to star in at least two additional films produced and directed by Toby, entitled "The Junkman" and "Deadline Auto Theft."

17. Toby registered a copyright for the Original Movie on August 5, 1983. Tragically, in 1989, Toby was killed during a stunt sequence while filming "Gone in 60 Seconds 2," which also featured Eleanor. Thereafter, by operation of law, in 1994, Denice obtained all right, title and interest in the Original Movie and the character "Eleanor" from the estate of H.B. "Toby" Halicki. On March 11, 1999, Denice recorded the passing of the copyrights for the Original Movie and the characters therein, including "Eleanor," to her by succession.

18. Denice and Toby have consistently maintained protection over the "Eleanor" character and mark and the "Gone in 60 Seconds" film and mark, and placed goods and services in the stream of commerce, including replicas of Eleanor and other Eleanor- and "Gone in 60 Seconds"- related merchandise. They also continuously used Eleanor in the stream of commerce displaying Eleanor at various shows and events throughout the nation. For example, to promote the Original Movie on its initial release, Toby took Eleanor on a tour across the United States. As part of this publicity tour, Eleanor was featured as a star attraction at the first Long Beach Grand Prix. Further, Eleanor was featured in an exhibit entitled "Great Cars of the Movies," which ran for four months at the Peterson Automotive Museum, and she was the star attraction at the California Classic Car Rally and "L.A. 2000 NASCAR Street Race."

19. Denice and Toby further added to the value of the "Eleanor" and "Gone in 60 Seconds" marks by, among other things, their licensing of the marks, and by reissuing the Original Movie and its sequels on DVD and VHS in 2000.

**The Agreement with HPC**

20. In no small part due to the popularity and appeal of the character of Eleanor, in 1995, the President of Hollywood Pictures Corporation ("HPC"), a division of The Walt Disney Company, approached Denice about developing a remake or sequel of the Original Movie. Following extensive negotiations, on October 12, 1995, Denice entered into a Memorandum of Agreement ("Agreement") with HPC to develop and remake the Original Movie.

21. By the express terms of the Agreement, Denice granted to HPC exclusively all right, title and interest of every kind and nature in and to sequels to and/or remakes of the Original Movie, including, among other things, the right to produce a motion picture based upon or adapted from all or any part of the Original Movie.

22. By further express terms of the Agreement, Denice reserved to herself the right to manufacture, sell and distribute merchandise utilizing the car known as "Eleanor." At all times relevant, it was the intent, desire and understanding of the parties to the Agreement – HPC and Denice – that Denice would and did reserve to herself the sole and exclusive merchandising rights to the character of "Eleanor," as the car appears in the Original Movie or as it appears in any remake or sequel thereof in whatever form.

23. In September 2000, Denice assigned to plaintiff The Original Gone in 60 Seconds LLC a license for certain rights in "Gone in 60 Seconds" that she had not already licensed to HPC.

24. To further confirm Denice's sole and exclusive merchandising rights to the character of "Eleanor," as the car appears in the Original Movie or as it appears in any remake or sequel thereof, on or about July 2007, HPC and Denice

entered into a "Quitclaim Agreement" in which HPC "quitclaim[ed] to [Denice] Halicki all of HPC's goodwill, right, title and interest of every kind and nature whatsoever in and to" the "merchandising rights ('Eleanor Merchandising Rights') to that certain car called 'Eleanor' as such car appears in a remake ('Remake') of the 1974 film 'Gone in 60 Seconds' ('Original Picture')." Pursuant thereto, Denice has the sole and exclusive right to merchandise any good or item bearing the character, likeness, name or mark of "Eleanor" from the Original Movie and the Remake, and to pursue and enforce any infringement of such right by any third party.

25. In or about November 2007, Denice assigned certain of her merchandising rights in and to the character "Eleanor" to Eleanor Licensing, LLC.

**The Remake Starring Eleanor**

26. In 2000, HPC released the remake of the Original Movie "Gone in 60 Seconds" (the "Remake"). HPC registered a copyright for the Remake on June 28, 2000 (Registration No. PA0000933893).

27. The Remake starred Nicholas Cage, Angelina Jolie, Robert Duvall, and Eleanor. As with the Original Movie, Eleanor in the Remake is a vintage Ford Fastback Mustang. This time, she was "tricked out" for the movie to look like a "futuristic movie version" of a Ford Mustang Shelby GT500, a car developed and produced under the leadership of Lee Iacocca, who became known as the "Father of the Mustang." However, as admitted by Defendant Carroll Shelby, Eleanor in the Remake is not an authentic 1967 Shelby Mustang. Not only was Eleanor's body or shell not built utilizing an authentic Shelby Mustang, Eleanor in the Remake contained various design elements that were unique to Eleanor, which do not appear on any stock versions of the Ford Fastbacks or the Shelby GT500s. There has never been an Eleanor in the Original Movie or the Remake that was built from a Shelby GT500.

28. As with the Original Movie, Eleanor was once again prominently featured as a star in the Remake. Similar to the Original Movie, the storyline for the Remake called for the main character played by Nicholas Cage (named "Memphis Raines") and his gang to steal 50 specific, high-end cars within 24 hours. However, Eleanor and her role in the movie did not change at all. She is again the car that is referenced by name most often, the one that evaded Memphis's grasp time and again, and her relationship to Memphis Raines is integral to the advancement and development of the movie. Eleanor is referred to in the Remake as Memphis's "unicorn," that mystical, mythical creature impossible to capture. Yet, at the end of the movie, following a 12-minute complicated and complex car chase sequence to elude the police, Memphis and Eleanor once again drive off into the distance.

29. The Remake achieved even greater success than the Original Movie, grossing over $101 million in domestic sales and $232 million worldwide.

30. Confirming her importance to the movie, Eleanor was purposefully and conspicuously featured on all promotional, marketing, advertising and merchandising materials for the Remake, including, among other things, movie posters, DVD covers, CD covers, and banners. Additionally, Eleanor from the Remake as well as Eleanor from the Original Movie have continuously made appearances at various shows and events throughout the nation. Plaintiffs and HPC have continuously and consistently maintained protection over the Eleanor character and "Gone in 60 Seconds," whether in the Original Movie or the Remake.

31. As a result of the Original Movie, the Remake, and all of the efforts of Plaintiffs and HPC to promote, market and commercialize Eleanor, the character of Eleanor and the name and mark of "Eleanor" became indelibly linked and inseparable in the minds of the public with the movie itself. Thus, "Eleanor" has acquired a distinctiveness and a secondary meaning with the consumers.

**Defendants' Blatant Theft of Eleanor**

32. Defendants are in the business of manufacturing, marketing and selling – without the authorization, consent or knowledge of Plaintiffs – "knock offs" of "Eleanor" vehicles featured in the Remake.

33. Defendants admittedly had no participation, role or involvement in or connection with the making of the Original Movie or the Remake, or the creation, design or development of "Eleanor" from the Original Movie or the Remake. Defendants also readily admit that they do not own any intellectual property rights in and to the character, mark, look, dress or name of "Eleanor," or the right to merchandise "Eleanor," and that they are not operating pursuant to a license from any party or entity purporting to own such rights.

34. Regardless, Defendants make no secret of the fact that they are capitalizing on and exploiting the fame, popularity and demand for "Eleanor" vehicles. On the company's own website, Monfort, the founder, President, and purported designer for Ronaele, unequivocally stated that "Ronaele, LLC started from the passion . . . most of all [sic] 'Eleanor' from the movie 'Gone in Sixty [sic] Seconds[,]' starring Nicholas Cage." In numerous interviews given to print and internet media, including, but not limited to, WebTV, Monfort freely admitted that he "ripped off" Eleanor from the Remake. When asked how he got started building his "amazing Mustangs," Monfort stated that, "Well, I've always been a fan of "Gone in 60 Seconds," and I always wanted to build an Eleanor or own an Eleanor. . . so I went and bought a [Ford Mustang] and developed the body kit design . . . ." Of course, Monfort did not stop at building an Eleanor for himself. He then went out and mass marketed the replica vehicles to the public and reaped substantial financial windfall therefrom. In his owns words, Monfort stated that, within three months, he had built his "Eleanor look-a-like," which he then showed to the public, and "[w]ithin the first month, [he had] received three orders and sold one finished car."

35. Plaintiffs are informed and believe, and thereon allege, that Defendants are selling each of their infringing vehicles for $90,000 or more, and that Defendants have thus far sold in excess of 70 cars.

36. In advertising the Ronaele vehicles, Defendants make clear that what they are making and what they are selling are "Eleanors" from the movie "Gone in 60 Seconds." In point of fact, Defendants prominently feature on their own website copies of magazine covers featuring the Ronaele vehicles, with the words "Eleanor" and "Gone in 60 Seconds" emblazoned next to the cars. Defendants further expressly market their infringing vehicles by claiming that these vehicles have the "flawless make of the Eleanor."

37. In taking these wrongful actions, Defendants knew that they were infringing upon and violating the rights of the Plaintiffs. As an initial matter, knowing that Plaintiffs owned the exclusive merchandising rights for "Eleanor," Plaintiffs are informed and believe, and based thereon allege, that prior to engaging in the mass advertisement and sale of their infringing vehicles, Defendants attempted to contact Denice to obtain a license to manufacture and sell the Remake "Eleanors." When they were unable to obtain such a license, however, Defendants simply proceeded without one in willful contravention of the Plaintiffs' rights and interests.

38. Further, Defendants selected the name "Ronaele" for their vehicles for the express and deliberate purpose of attempting to circumvent the Plaintiffs' rights. Being aware of other more famous car builders who unsuccessfully attempted to call their "rip off" vehicles "Eleanors," Defendants chose the "creative moniker – Ronaele," which admittedly is nothing more than the name "Eleanor" spelled backwards. Plaintiffs are informed and believe, and based thereon allege, that the name "Ronaele" is printed on the side of every vehicle produced" by Defendants.

39. Despite their lack of any interest or right in and to the character, mark, name and look or "Eleanor," and despite their knowledge of the Plaintiffs' rights in that regard, on or about May 26, 2006, Defendants filed an application with the United States Patent and Trademark Office to register the trademark "Ronaele," which is simply "Eleanor" spelled backwards.

40. Plaintiffs are informed and believe, and based thereon allege, that, in addition to the infringing vehicles, Defendants have expanded their exploitation of "Eleanor" by, among other things, marketing and selling "Eleanor" kits, "Eleanor" parts, and other merchandise relating to "Eleanor." Defendants have also engaged in extensive commercial promotion of the offending products in a manner that intentionally treads on Plaintiffs' rights.

### FIRST CLAIM FOR RELIEF

### (For Common Law Trademark Infringement Against All Defendants)

41. Plaintiffs reallege and incorporate by this reference each and every allegation set forth above at paragraphs 1 through 40, inclusive, as though fully stated herein.

42. The marks "Eleanor" and "Gone in 60 Seconds" from the Remake are the properties of Plaintiffs, who own common law trademark rights and protections in the marks "Eleanor" and "Gone in 60 Seconds."

43. The marks "Eleanor" and "Gone in 60 Seconds" are indicators of source, namely Plaintiffs' rights as described herein.

44. Defendants and each of them are aware of Plaintiffs' rights in and to the marks "Eleanor" and "Gone in 60 Seconds" as an indicator of source.

45. Defendants were and are consciously aware of the marks "Eleanor" and "Gone in 60 Seconds" and have among other things marketed the offending motor vehicles in the stream of commerce in a manner that treads on Plaintiffs' rights with full knowledge of them. Defendants' marketing of the

"Eleanor" replica cars and other commercial activities infringe Plaintiffs' common law trademark rights under Federal and California law in and to the marks "Eleanor" and "Gone in 60 Seconds."

46. Plaintiffs never gave Defendants permission to conduct their offending activities.

47. As a direct and proximate result of the foregoing conduct, Plaintiffs are entitled to damages as against all Defendants and each of them in an amount that is presently unknown, to disgorgement of Defendants' profits, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition Against All Defendants)

48. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 47 hereof, inclusive, as if set forth in full herein.

49. Defendants and each of them have made and continue to make use in commerce of Plaintiffs' common law trademarks and trade names relating to "Eleanor" and the "Gone in 60 Seconds" film without Plaintiffs' permission.

50. Plaintiffs represent the sole source of "Eleanor" and the "Gone in 60 Seconds" film.

51. Defendants and each of them have used Plaintiffs' trademarks and trade names in a manner that creates a false association between Defendants and Plaintiffs' property rights in "Eleanor" and the "Gone in 60 Seconds" film.

52. Defendants' use of Plaintiffs' common law trademarks, trade names, goodwill and other rights is in direct violation of 15 D.S.C. 1125(a) et seq., and represents a false designation of origin and/or source entitling Plaintiffs to all remedies available under law.

53. As a direct and proximate result of the foregoing conduct, Plaintiffs are entitled to damages as against all Defendants and each of them in an amount that is presently unknown, to disgorgement of Defendants' profits, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## THIRD CLAIM FOR RELIEF

**(For Copyright Infringement Against All Defendants)**

54. Plaintiffs reallege and incorporate by this reference each and every allegation set forth above at paragraphs 1 through 53, inclusive, as though fully stated herein.

55. Plaintiffs are the exclusive owner of the goodwill, right, title and interest of every kind and nature whatsoever in and to the merchandising rights to the car character called "Eleanor" as it appears in the Remake. The Remake and all characters therein, including "Eleanor," were registered for a copyright on June 28, 2000 (Registration No. PA0000933893).

56. Eleanor is the featured star of the Remake and represents the story as it is told in the film. Plaintiffs have continuously protected the copyright in Eleanor and the Remake since 2000 and Plaintiffs continue to do so.

57. Defendants were and are consciously aware of "Eleanor" and the Remake and among other violations have marketed and continue to market the offending motor vehicles and other products with full knowledge of Plaintiffs' rights.

58. Defendants' marketing of the "Eleanor" replica cars and other products infringes Plaintiffs' copyrights in and to Eleanor and "Gone in 60 Seconds."

59. Plaintiffs never gave Defendants permission to conduct their offending activities.

60. As a direct and proximate result of the foregoing conduct, Plaintiffs are entitled to damages as against all Defendants and each of them in an amount that is presently unknown, to disgorgement of Defendants' profits, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## FOURTH CLAIM FOR RELIEF
### (State Law Unfair Competition)

61. Plaintiffs reallege and incorporate by this reference each and every allegation set forth above at paragraphs 1 through 60, inclusive, as though fully stated herein.

62. Defendants and each of them have engaged in a pattern of unlawful and unfair acts by marketing their vehicles as "Eleanors" and associating the vehicles with "Gone in 60 Seconds." Such unlawful and unfair marketing activities caused direct harm to Plaintiffs by violating Plaintiffs' common law trademark rights and interfering with their current and prospective actions to sell their own, authentic "Eleanors" from "Gone in 60 Seconds." Defendants' activities are also likely to mislead the public, by creating a false association between Defendants and Plaintiffs.

63. Defendants' activities constitute multiple violations of *California Business and Professions Code*, Sections 17200 *et seq.*

64. As a direct and proximate result of the foregoing conduct, Plaintiffs are entitled to damages as against all Defendants and each of them in an amount that is presently unknown, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## FIFTH CLAIM FOR RELIEF

### (Constructive Trust /Accounting)

65. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 64 hereof, inclusive, as if set forth in full herein.

66. Defendants hold those commercial profits and personal gains which have accrued to them as a result of infringement and other wrongful acts described herein as constructive trustees of those commercial profits and personal gains, for the benefit of Plaintiffs.

67. Plaintiffs seek an accounting of said funds, and an order declaring that Defendants hold said funds in trust for Plaintiffs.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants)

68. Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 67 hereof, inclusive, as if set forth in full herein.

69. Plaintiffs have consistently used the "Eleanor" and "Gone in 60 Seconds" marks from the Original Movie in commerce since 1974, and the same marks from the Remake since 2000, and they have protected the use of these marks. Plaintiffs are thus the first and continued users of the "Eleanor" and "Gone in 60 Seconds" marks.

70. Despite the fact that Plaintiffs are the prior user of the marks, in 2006 Defendant Ronaele, LLC filed application for the trademark "Ronaele," which is simply Eleanor spelled backwards, with the Patent and Trademark Office, Serial Number 78894092, which application is currently pending (the "Application").

71. The conduct of Defendants as set forth above has caused harm to Plaintiffs by interfering with and disrupting Plaintiffs' reasonable expectation of

prospective economic advantage from the use of the rights and property Plaintiffs own and control relating to "Eleanor" and the "Gone in 60 Seconds" film, and by creating a false association between Defendants and Plaintiffs.

72. An actual controversy has arisen and exists between Plaintiffs and Defendants for which Plaintiffs have no adequate remedy at law in that Defendants claim a trademark to which Plaintiffs hold rights as a prior user. It is appropriate and justice requires that the Court enter a judgment declaring the invalidity of the Registration due to Plaintiffs' prior use.

73. Plaintiffs therefore seek an order from the Court, pursuant to 15 U.S.C. §1119, instructing the United States Patent and Trademark Office to cancel the Application.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

1. For general damages in an amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial sufficient to punish and deter Defendants from engaging in such activity in the future;

3. For damages and disgorgement of lost profits, past and future, in an amount to be proven at trial;

4. For damages for loss of recognition by Plaintiffs;

5. For injunctive relief as against Defendants and each of them;

6. For an accounting;

7. For an order declaring that Defendants hold the funds which they have gained as a result of their wrongful acts as constructive trustees for the benefit of Plaintiff;

8. For an order instructing the United States Patent and Trademark Office to cancel the Application for the Ronaele mark;

9. For costs of suit;

10. For any applicable and appropriate pre- and post-judgment interest;

11. For any other relief that the Court deems just and proper.

DATED: January 18, 2008

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

By _____
Allan Browne
Attorneys for Plaintiffs Denice Shakarian Halicki, The Original Gone in 60 Seconds, LLC, Halicki Films, LLC and Eleanor Licensing, LLC

DREIER STEIN KAHAN BROWNE WOODS

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues properly so tried.

DATED: January 18, 2008

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

By _____
Allan Browne
Attorneys for Plaintiffs Denice Shakarian Halicki, The Original Gone in 60 Seconds, LLC, Halicki Films, LLC and Eleanor Licensing, LLC